**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT JACKSON, | Case No.: 2:23-cv-00124-APG-DJA |
| Plaintiff | **Order (1) Denying Defendants' Motion for Reconsideration of Order Granting in Part Plaintiff's Motion to Strike and (2) Granting Defendants' Motion to Dismiss in Part** |
| v. | |
| NEVADA DEPARTMENT OF CORRECTIONS, et al., | |
| | [ECF Nos. 32, 45] |
| Defendants | |

Pro se plaintiff Robert Jackson sued the Nevada Department of Corrections (NDOC) and several NDOC officials under 42 U.S.C. § 1983 for allegedly violating his civil rights while incarcerated at Nevada's High Desert State Prison (HDSP).  The defendants have twice moved to dismiss.  Following the defendants' second motion to dismiss, Jackson's currently remaining claims are a First Amendment retaliation claim, an Eighth Amendment claim based on deprivation of yard time, an Eighth Amendment claim based on indifference to dangerous confinement conditions, and a Fourteenth Amendment discrimination claim. ECF No. 42 at 11.

In addressing the defendants' second motion to dismiss, I struck the portions of the motion targeting Jackson's First and Fourteenth Amendment claims, and I dismissed some of Jackson's claims against some of the defendants to be consistent with my prior screening order.[1]

---

[1] In his second amended complaint, Jackson realleged all claims against all defendants, including those claims I had screened out against some defendants.  So I dismissed Jackson's First Amendment claim and Eighth Amendment claim based on deprivation of yard time against certain defendants to be consistent with my prior screening order. ECF No. 42 at 11.  Following that order, Jackson's First Amendment claim is against Brian Williams, James Scally, Jeremy Bean, Jennifer Nash, and James Dzurenda. *Id*.  Jackson's Eighth Amendment claim based on indifference to dangerous conditions is against Brian Williams, Scally, Dzurenda, Lee Daniels, Calvin Johnson, Nash, Bean, Julie Williams, and Frank Dreesen. *Id*.  Jackson's Eighth Amendment claim based on deprivation of yard time is against Dreesen, Johnson, and Julie

*Id.* I also ordered Jackson to respond to the sections of the second motion to dismiss that I did not strike, which he did.

The defendants move to reconsider my order striking sections of their second motion to dismiss, which I deny. But I grant the portions of the second motion to dismiss that I did not strike and dismiss Jackson's two Eighth Amendment claims without leave to amend.

## I.      BACKGROUND[2]

Prison officials placed HDSP in total lockdown in response to Jackson's and hundreds of other inmates' grievances regarding food preparation in 2019. The various lockdown procedures persisted through the COVID-19 pandemic, and restrictive conditions have continued despite no ongoing public health concerns. Because of the limited time allowed outside of cells, inmates' access to resources such as telephones, microwaves, showers, and caseworkers has been reduced, which has led to increased competition among inmates for these resources. This competition has caused more violent incidents such as three "race riots," a riot between inmates and prison staff, and inmate suicides, all of which have caused HDSP officials to implement more restrictions. ECF No. 29 at 10. Jackson and others have become "proxy mental health [counselors]" to other inmates suffering from increased anxiety. *Id.*

In the prison yard, officials replaced a large outdoor recreation area containing various amenities with a much smaller fenced area that guards jokingly call "the octagon" in reference to a mixed martial arts ring. *Id.* at 11. It is one-third of the size of the previous yard and lacks equipment, restroom access, water fountains, and an alarm inmates can use to call for help. There is a blind spot where prison officers cannot see a section of the octagon. Jackson worries

---

Williams. *Id.* Jackson's Fourteenth Amendment discrimination claim is against Dzurenda, Daniels, Brian Williams, Johnson, Bean, Scally, Dreesen, Julie Williams, and Nash. *Id.*

[2] All facts are taken from the second amended complaint. ECF No. 29.

that the more crowded space and increased competition for resources create a dangerous space such that "[i]f [the octagon] [erupts] into violence, there will be no escape." *Id.* at 12. Prison officers admit they are unwilling to enter to break up conflicts in the octagon until backup arrives.

The restrictions Jackson describes also include reducing yard time from what had previously been one hour per day, every day. After two years of no yard time during the pandemic, officials eventually restored the prior conditions of one hour per day. After the octagon was completed, officials reduced Jackson's yard time to four one-hour periods per week. Jackson has submitted at least six grievances "addressing the deteriorating conditions of confinement created as a direct result of the retaliatory lockdown initiated" by the defendants. *Id.* at 9.

Jackson filed his First Amended Complaint (FAC) on July 17, 2023. ECF No. 10. I screened the FAC and dismissed his First Amendment claim and Eighth Amendment claim about indifference to the prison's exercise conditions against some of the NDOC officials. ECF No. 11. The defendants subsequently moved to dismiss the remaining claims under Federal Rule of Civil Procedure (FRCP) 12(b)(6), including moving for qualified immunity. ECF No. 17. I dismissed Jackson's Eighth Amendment claims but granted him leave to amend those claims. ECF No. 28. I denied the motion as to Jackson's First and Fourteenth Amendment claims. *Id.*

Jackson later filed his Second Amended Complaint (SAC), which realleged without amendment his First Amendment and Fourteenth Amendment claims. ECF No. 29. The SAC realleged his Eighth Amendment claims with new legal citations supporting them. *Id.* at 14-16. The SAC did not add any new claims or factual allegations. *Compare* ECF No. 10, *with* ECF No. 29.

The defendants again moved to dismiss all claims under FRCP 12(b)(6), including moving for qualified immunity. ECF No. 32.  Instead of filing a response, Jackson moved to strike sections of the second motion to dismiss for raising arguments available to the defendants but omitted in the first motion. ECF No. 35.  I granted Jackson's motion to strike the sections of the defendants' second motion to dismiss targeting his First and Fourteenth Amendment claims but denied it as to the sections targeting his Eighth Amendment claims. ECF No. 42 at 12.  I ordered Jackson to respond to the motion to dismiss his Eighth Amendment claims, which he did. *Id.*; ECF No. 43.

The defendants move to reconsider my order striking their arguments, and Jackson opposes.  I deny the defendants' motion because they have not shown I committed a clear error, they raise arguments that reasonably could have been raised earlier, and striking portions of the motion to dismiss was not manifestly unjust.  I dismiss both of Jackson's Eighth Amendment claims because the defendants are entitled to qualified immunity, and I deny Jackson leave to amend his complaint because it would be futile.

## II.    MOTION FOR RECONSIDERATION

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision is manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  "Clear error occurs when the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quotation omitted).  "A 'manifest injustice' is defined as 'an error in the trial court that is direct, obvious, and observable.'" *de Borja v. Razon*, 340 F.R.D. 400, 409 (D. Or. 2021) (simplified).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (simplified). It "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id.* (emphasis omitted).

As an initial matter, I clarify my prior order. The defendants state that I ruled that they "waived their failure to state a claim argument regarding Jackson's First and Fourteenth Amendment claims." ECF No. 45 at 4. I did not. I struck those sections of their second pre-answer motion to dismiss because those arguments were previously available to them. ECF No. 42 at 11-12. Though the arguments cannot be raised in another pre-answer motion to dismiss, they are not waived. The defendants can raise them, for example, in any pleading allowed or ordered under FRCP 7(a), in a motion for judgment on the pleadings under FRCP 12(c), or at trial. FRCP 12(h)(2).[3]

The defendants argue I committed clear error by prohibiting a subsequent motion to dismiss from making more refined or developed arguments based on defenses first raised in previous motions to dismiss. I construe this to mean that the defendants disagree with my interpretation of "defense or objection" under FRCP 12(g). I interpreted "defense or objection" to include arguments made in support of the defenses listed in FRCP 12(b). The defendants argue that FRCP 12(g) only requires them to generally raise a defense of failure to state a claim in their first motion to dismiss and that subsequent motions to dismiss can include new

---

[3] The defendants argue that I committed clear error by ignoring FRCP 12(h)(2). I did not. ECF No. 42 at 3 n.2. FRCP 12(h)(2) does not include subsequent pre-answer motions to dismiss as an acceptable means to raise previously available failure-to-state-a-claim arguments. The avenues listed under FRCP 12(h)(2) remain available for the defendants to raise these arguments.

arguments of how a plaintiff failed to state a claim even if the plaintiff has not amended the relevant allegations.  In the defendants' first motion to dismiss, they argued that Jackson's First and Fourteenth Amendment claims failed because they did not state a claim for which relief could be granted and because the defendants were entitled to qualified immunity. ECF No. 17 at 10-11, 14-18.  They raised these same challenges again in their second motion to dismiss but included more extensive and new arguments. *Compare id.*, *with* ECF No. 32 at 8-10, 16-20.

The defendants have not met their burden of showing I committed a clear error.  First, the defendants could have raised this argument in their response to the plaintiff's motion to strike under FRCP 12(g). *See Kona Enters., Inc.*, 229 F.3d at 890 (a motion for reconsideration "may not be used to raise arguments . . . when they could reasonably have been raised earlier" (emphasis omitted)).  Second, the defendants do not cite to a case defining "defense or objection" under FRCP 12(g) in a way supporting their interpretation.  Third, allowing the defendants to do this could lead to "piecemeal consideration of a case," where a party serially files motions with different arguments under the same Rule 12(b) defense even though those arguments were available to them previously. *See* FRCP 12(g) advisory committees' note to 1966 amendment.  This is at odds with FRCP 12(g)'s "design[] to avoid repetitive motion practice." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) (simplified) ("*In re Apple*").

The defendants also contend I committed clear error in my application of *In re Apple*. They argue I should have considered their arguments because it would have avoided unnecessary delay, which furthers the efficiency goals of the Federal Rules of Civil Procedure and is consistent with *Sidebotham v. Robison*, 216 F.2d 816 (9th Cir. 1954).

In *In re Apple*, the Ninth Circuit found that the district court's ruling on the defendant's Rule 12(b)(6) motion was not improper without deciding if the motion was filed late under FRCP 12(g). 846 F.3d at 320.  First, it stated the defendant's Rule 12(b)(6) motion "may not have been late-filed within the meaning of Rule 12(g)(2)" because the district court did not have subject matter jurisdiction when the defendant filed prior motions to dismiss that omitted the 12(b)(6) defense.[4] *Id.*  As an alternative basis for its ruling, "assum[ing] arguendo" that the Rule 12(b)(6) motion was late, the Ninth Circuit held that "any error committed by the district court's ruling" on the motion "was harmless." *Id.*  This is because the Rule 12(b)(6) motion "did not appear to have been filed for any strategically abusive purpose" and not ruling on the motion "would have substantially delayed resolution" of the question. *Id.  In re Apple* therefore deemed it harmless error for a district court "to hear successive Rule 12(b)(6) motions if certain factors, like a just and speedy resolution of the case, warrant it." *Interior Elec. Inc. Nev. v. T.W.C. Constr., Inc.,* No. 2:18-cv-01118-JAD-VCF, 2020 WL 5983882, at *3 (D. Nev. Oct. 8, 2020).  It does not mandate that I consider Rule 12(b)(6) arguments that are barred under FRCP 12(g) nor "bless[] pre-answer motion practice that effects death by a thousand cuts." *Id.*  Accordingly, it was not clear error under *In re Apple* to decline to consider the defendants' arguments in their second pre-answer motion to dismiss Jackson's First and Fourteenth Amendment claims.

The defendants next argue I improperly relied on *Moser v. Benefytt, Inc.*, 8 F.4th 872 (9th Cir. 2021), because it has a different factual background than this case.  I cited to *Moser* to define "available" under FRCP 12(g). ECF No. 42 at 3, 4.  It is not clear error to cite to Ninth Circuit caselaw defining statutory terms, even if the facts in the case are different than the facts before me.

---

[4] Here, there is no argument that I lack subject matter jurisdiction over this case.

The defendants finally argue it is manifestly unjust to strike their arguments because the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation," and because the Prison Litigation Reform Act (PLRA) directs courts to "dismiss the case at any time if the court determines that the action fails to state a claim on which relief may be granted." ECF No. 45 at 10-11; *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024) (simplified). These are not grounds to reconsider my order. First, the defendants could have raised these arguments in their response to Jackson's motion to strike. Second, I ruled on whether the defendants had qualified immunity on the claims at an early stage of the litigation when the defendants filed their first motion to dismiss, adhering to the Supreme Court's guidance in *Hunter*. ECF Nos. 17; 28. Third, it is not a "direct, obvious, and observable" error for the defendants to wait somewhat longer to receive a second ruling on their qualified immunity arguments for two of Jackson's claims. *de Borja*, 340 F.R.D. at 409 (quotation omitted). If the defendants choose, they can move for qualified immunity in other ways, such as in a FRCP 12(c) motion after filing an answer to Jackson's complaint. FRCP 12(h)(2).

### III.     MOTION TO DISMISS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe them in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).

To defeat a motion to dismiss, a plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id*. at 555. Instead, the complaint must include "a short and plain statement of the claim" that shows the plaintiff "is entitled to relief" and gives the defendants "fair notice of what the claim is and the grounds upon which it rests." *Id*. at 555 (simplified).

The defendants argue that both of Jackson's Eighth Amendment claims fail to state a claim upon which relief can be granted. "The Eighth Amendment's prohibition against cruel and unusual punishments imposes duties on prison officials to provide humane conditions of confinement." *Hampton v. Cal.*, 83 F.4th 754, 765 (9th Cir. 2023) (simplified). "The Amendment's protections extend to conditions of confinement that are sure or very likely to cause serious illness and needless suffering in the future." *Id.* at 766 (simplified). "[A] prison official violates the Eighth Amendment only when two requirements are met." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (simplified). Second, "[t]he inmate must also allege that the defendant official acted, subjectively, with deliberate indifference to inmate health or safety." *Hampton*, 83 F.4th at 766. The inmate must show that "the official [knew] of and disregard[ed] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The defendants also argue they are entitled to qualified immunity on both of Jackson's Eighth Amendment claims. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (simplified). At the motion to

9

dismiss stage, "[d]ismissal is not appropriate unless [I] can determine, based on the complaint itself, that qualified immunity applies." *Hampton*, 83 F.4th at 765. (simplified).[5]  I may decide either prong of the qualified immunity analysis first. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

"A constitutional right may be clearly established by controlling authority or a robust consensus of cases of persuasive authority." *DeFrancesco v. Robbins*, 136 F.4th 933, 939 (9th Cir. 2025) (simplified).  The Ninth Circuit has been "somewhat hesitant to rely on district court decisions . . . because they do not necessarily settle constitutional standards." *Id.* (simplified). Though "unpublished decisions may inform [my] qualified immunity analysis, rarely ha[s] [the Ninth Circuit] concluded, absent any published opinions on point or overwhelming obviousness of illegality, that the law was clearly established on the basis of unpublished decisions only." *Id.* (simplified).  A plaintiff need not point to "a case directly on point for a right to be clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quotation omitted).  "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Rivas-Villegas*, 595 U.S. at 5 (simplified).  The plaintiff bears the burden of proving the right was clearly established at the time of the alleged violation. *Shooter v. Ariz.*, 4 F.4th 955, 961 (9th Cir. 2021).

---

[5] Jackson argues that I cannot decide whether the defendants are entitled to qualified immunity because doing so would be making inappropriate factual determinations at the motion to dismiss stage.  I do not make any factual determinations in my order.  I accept all well-pleaded allegations in Jackson's second amended complaint as true, construe them in the light most favorable to him, and then make a "legal determination[]" whether qualified immunity applies. *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017); *Kwan*, 854 F.3d at 1096.  Ruling on qualified immunity at the dismissal stage is proper. *See Hampton*, 83 F.4th at 761, 765; *Shooter v. Ariz.*, 4 F.4th 955, 957, 961 (9th Cir. 2021).

     *i.*     *Jackson does not cite to clearly established law showing that decreasing his yard time violates the Eighth Amendment.*

Jackson alleges that the decrease of his outdoor yard time from seven hours per week to four hours per week violates the Eighth Amendment. The Ninth Circuit has "recognized that exercise is one of the basic human necessities protected by the Eighth Amendment." *Norbert v. City & Cnty. of S.F.*, 10 F.4th 918, 929 (9th Cir. 2021) (simplified). But it has "never held that all deprivations of outdoor exercise are per se unconstitutional." *Id.*

Jackson has not cited to a case that would put the defendants "on notice" that four hours per week of outdoor exercise time is "unlawful." *Pearson*, 555 U.S. at 244 (simplified). Jackson cites five cases across his response and second amended complaint to support his Eighth Amendment claim regarding the decrease in his yard time.[6] Three do not address exercise. *Farmer*, 511 U.S. 825; *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980); *Stickney v. List*, 519 F. Supp. 617 (D. Nev. 1981). Another was decided after the defendants' conduct in this case and thus could not have put them on notice. *Brackens v. City & Cnty. of S.F.*, Case No. 19-cv-02724-SK, 2023 U.S. Dist. Lexis 186476 (N.D. Cal. Oct. 16, 2023).[7]

Jackson's remaining citation is *LeMaire v. Maass*, 12 F.3d 1444 (9th Cir. 1993). In *LeMaire*, the prisoner-plaintiff raised an Eighth Amendment claim after spending most of a five-year period with no out-of-cell exercise privileges. *Id.* at 1457. Though "the long-term denial of

---

[6] The defendants argue that Jackson failed to present any argument in his opposition regarding the clearly established prong of qualified immunity. When I ruled on the defendants' first motion to dismiss, I held that Jackson did not meet the clearly established law prong. ECF No. 28 at 10-11. Jackson thereafter added several case citations to his Eighth Amendment claims in his SAC. ECF No. 29 at 14-16. Therefore, I interpret the cases cited in the SAC and in Jackson's response to the second motion to dismiss as Jackson's attempt, as a pro se prisoner-plaintiff, to address the clearly established law prong.

[7] Jackson filed his FAC on July 17, 2023. ECF No. 10. His SAC added no new factual allegations. *Compare id.*, *with* ECF No. 29.

outside exercise is unconstitutional," the Ninth Circuit nevertheless held the prison officials did not violate the Eighth Amendment because the plaintiff's own misconduct in the prison caused him to lose his exercise privileges. *Id.* at 1458 (emphasis removed).  Because Jackson has not been denied exercise time entirely, *LeMaire* does not clearly establish that the defendants' conduct violates the constitution.  Therefore, the defendants are entitled to qualified immunity on Jackson's Eighth Amendment claim based on the deprivation of yard time, and I dismiss the claim.

  ii.  *I dismiss Jackson's Eighth Amendment claim based on indifference to dangerous confinement conditions.*

  Jackson alleges that a reduction in prisoners' time out of their cells has increased competition for scant prison resources such as the telephone, microwave, shower, and caseworker, which has caused violence, suicide, and anxiety among prisoners.  He also alleges that the transition from the larger yard to the octagon has created a space predisposed to violence and that prison officers are unwilling to enter the octagon immediately to stop the fighting. ECF No. 29 at 12.  He argues this constitutes an Eighth Amendment violation because the prison officials are deliberately indifferent to the increased safety risk to Jackson caused by these prison conditions.

  This claim is asserted against Brian Williams, Scally, Dzurenda, Daniels, Calvin, Nash, Bean, Julie Williams, and Dreesen.  Jackson fails to allege that any of these defendants was "subjectively aware" of this risk. *Farmer*, 511 U.S. at 829.  Jackson alleges that he filed at least six grievances regarding the deteriorating prison conditions.  A plaintiff may plausibly allege a prison official knew of a substantial risk to prisoner safety by alleging that a defendant received grievances related to the particular risk or condition of confinement at issue. *Disability Rights*

12

*Mont., Inc. v. Batista*, 930 F.3d 1090, 1099 (9th Cir. 2019) (stating that the plaintiff plausibly alleged that the "defendants knew about the risks" and "deliberately chose to maintain the harmful policies" where the "complaint alleged . . . that the [Department of Corrections] defendants receive regular grievances and appeals from prisoners complaining about the prison's treatment of their mental illness").  But Jackson does not allege that any of these defendants had access to, knew of, or received the grievances.

Jackson also alleges that several prison officers have described the octagon as a death trap and admit that they will wait to enter it to break up any fights until they have backup.  But comments from unnamed prison officers do not sufficiently allege that the named defendants knew of the risk the octagon posed.  Therefore, Jackson has not shown that the defendants knew of the risk he faced, and he has failed to state an Eighth Amendment claim.

In any event, Jackson has not cited cases clearly establishing that the defendants changing access to resources within HDSP created a "substantial risk of serious harm to an inmate" under the Eighth Amendment. *Farmer*, 511 U.S. at 828.  Jackson cites *Farmer*, which states that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." 511 U.S. at 833 (simplified).  This holding clearly establishes a prisoner's "right to be free from violence at the hands of other inmates" for the purposes of qualified immunity. *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1067 (9th Cir. 2016) (en banc).  It clearly establishes a constitutional right to be free of violence at the hands of other inmates when prison officials were aware of a specific threat one inmate posed to another, but the officials still allowed the two inmates to be in close proximity. *Id.* at 1065 (where the detainee-plaintiff was detained in a jail's sobering cell with another detainee, the detainee-plaintiff pounded on the cell's window for help, but the supervising officer did not enter the cell until 26 minutes later at which point the other detainee

had been attacking the detainee-plaintiff); *Wilk v. Neven*, 956 F.3d 1143, 1146, 1148-50 (9th Cir. 2020) (where the prisoner-plaintiff was threatened by another inmate, the prisoner-plaintiff reported the threat to prison officials, but the other inmate still was able to exit his housing unit to attack the prisoner-plaintiff in the prison yard); *Leonard v. Peters*, No. 21-35471, 2023 WL 387035, at *2-3 (9th Cir. Jan. 10, 2023) (where the prisoner-plaintiff was almost assaulted by another inmate in his housing unit after he received threats, the prison officials allowed the other inmate to return to the same housing unit, and the other inmate later assaulted the prisoner-plaintiff). *Farmer*'s holding and these cases are too dissimilar from the facts of this case to put the defendants on notice that decreasing prisoners' access to prison resources and privileges constitutes an Eighth Amendment violation by inciting violence among inmates.  Knowledge of threats from specific inmates is vastly different from general health and safety threats allegedly posed by reduced access to telephones, microwaves, showers, and caseworkers.  Therefore, *Farmer* does not clearly establish the defendants' conduct violated the Eighth Amendment.

Jackson cites two district court cases in support of this Eighth Amendment claim: *Jensen v. Shinn*, 609 F. Supp. 3d 789 (D. Ariz. 2022) and *Johnson v. Southern Desert Correctional Center*, No. 3:17-cv-00039-MMD-WGC, 2018 U.S. Dist. LEXIS 242524 (D. Nev. Mar. 2, 2018).  Two district court cases do not generally indicate a robust consensus of persuasive authority on a constitutional violation. *See S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1016 (9th Cir. 2017) (rejecting the premise that two district court decisions could clearly establish the law for qualified immunity purposes).  Even if they could, these cases are factually distinct, so they did not put the defendants here on notice that their conduct was unlawful.  In *Jensen*, there was no claim that the prison conditions, including the deprivation of yard time, incited violence or limited inmates' ability to escape from inmate violence. 609 F. Supp. 3d at 789, 907-08.

The second case, *Johnson*, was appealed to the Ninth Circuit, which affirmed the denial of qualified immunity in an unpublished decision because it was "clearly established that overcrowding can violate the Eighth Amendment when it 'is combined with other factors such as violence or inadequate staffing.'" *Johnson v. Dzurenda*, No. 20-17280, 2021 WL 5755083, at *1 (9th Cir. Dec. 3, 2021) (quoting *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 471 (9th Cir. 1989)).  In *Johnson*, two prisoners were housed in one-man prison cells, and their day room was a small, narrow hallway outside their prison cells that was locked. 2018 U.S. Dist. LEXIS 242524, at *14.  The plaintiff in *Johnson* alleged "overcrowding at [the prison] led to regular fights that were not addressed by guards due to inadequate staffing." 2021 WL 5755083, at *1. In *Balla*, a prison designed to hold 495 prisoners was incarcerating 741 by putting two prisoners in cells meant for one, which led to violence and sexual assaults among the inmate population. 869 F.2d at 471-72.

Here, as to the octagon, Jackson has not alleged any factors that, when combined with overcrowding, constitute an Eighth Amendment violation.  He alleges that "[i]f [the octagon] [erupts] into violence there will be no escape." ECF No. 29 at 12.  But he does not allege that any fights have happened between prisoners or that any inmates have threatened violence against other inmates due to the octagon's conditions.  Additionally, he does not allege that HDSP's living space itself is overcrowded.  In *Johnson* and *Balla*, the prisoner-plaintiffs alleged overcrowding occurred in the spaces where they spent most of their time: their cells and the hallway outside their cells. *Balla*, 869 F.2d at 471; *Johnson*, 2018 U.S. Dist. LEXIS 242524, at *13-14.  Here, Jackson alleges that the recreation yard he spends four hours a week in is "crowded" because it is one-third the size of the previous yard. ECF No. 29 at 11.  This is too different from housing two prisoners in a cell built for one or from locking prisoners most of the

day in a small hallway to put the defendants on notice that the octagon constitutes unconstitutional overcrowding under the Eighth Amendment.

The same issues arise when arguing these cases clearly establish that restricting inmates' use of phones, showers, microwaves, caseworkers, or other prison resources created a substantial risk of harm under the Eighth Amendment.  A prison incarcerating more people than it was designed to house is not the same as a prison limiting inmates' access to resources.  Additionally, prison officials have "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986) (simplified); *see Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1996) ("Prisoners have a First Amendment right to telephone access, subject to reasonable security limitations.").  Jackson cites to no cases where inmates' Eighth Amendment rights were found to be violated because prison officials, acting on this discretion, restricted inmates' use of resources which caused inmate violence.

The remaining four cases that Jackson cites do not clearly establish that the defendants' conduct violates the Eighth Amendment.  One was decided after the conduct in question here so it could not have put the defendants on notice. *Farley v. Dir. Josh Tewalt*, Case No. 1:21-cv-00409-BLW-DKG, 2024 U.S. Dist. LEXIS 67572 (D. Id. March 4, 2024).  The other three do not deal with prison policies increasing violence among the inmates. *Helling v. McKinney*, 509 U.S. 25, 27-28 (1993) (addressing an inmate's involuntary exposure to tobacco smoke); *Wilson v. Seiter*, 501 U.S. 294, 296 (1991) (addressing the requisite mental state for claims like overcrowding but not deciding the constitutionality of the conditions at issue); *Turner v Safley*, 482 U.S. 78, 81-82 (1987) (addressing prison regulations related to marriage and correspondence).  Therefore, Jackson has not shown that clearly established law put the

16

defendants on notice that establishing the octagon or limiting inmates' access to prison resources created a substantial risk of serious harm under the Eighth Amendment.  Accordingly, the defendants are entitled to qualified immunity, and I dismiss this claim.

   iii.   *I decline to grant Jackson leave to amend his complaint, but I do not assess a strike against him.*

In my order on the defendants' first motion to dismiss, I dismissed the two Eighth Amendment claims because Jackson had not identified clearly established law showing the defendants' conduct was unlawful. ECF No. 28 at 10.  But I granted him leave to amend his complaint to "plausibly allege facts to show a violation of clearly established Eighth Amendment rights." *Id.* at 11.  He then filed his SAC and added case citations to his Eighth Amendment claims.

Jackson has had multiple opportunities to show the defendants' conduct violated clearly established Eighth Amendment rights after being put on notice that he must do so.  He has not done so in his response to the defendants' first motion to dismiss, his SAC, or his response to the defendants' second motion to dismiss.  Amendment would be futile on these claims because Jackson has repeatedly failed to refute the defendants' claims to qualified immunity. *See Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1007 (9th Cir. 2009) (leave to amend is not required when the plaintiff was previously allowed to amend but failed to correct identified deficiencies).  Therefore, I do not grant Jackson leave to amend either of his Eighth Amendment claims.

The defendants argue that I should assess a strike against Jackson under the PLRA. Because two of Jackson's claims in this case are not dismissed, I do not assess a PLRA strike against him. *Harris v. Harris*, 935 F.3d 670, 674 (9th Cir. 2019) (when there are "multiple

claims within a single action, [I] assess a PLRA strike only when the case as a whole is dismissed for a qualifying reason" (simplified)).

**IV.    CONCLUSION**

I THEREFORE ORDER that the defendants' motion for reconsideration **(ECF No. 45) is DENIED.**

I FURTHER ORDER that the defendants' motion to dismiss **(ECF No. 32) is GRANTED in part**.  I dismiss Jackson's two Eighth Amendment claims without leave to amend.

DATED this 26th day of February, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

18